619 P.2d 1064

Louis NEIHAUS and Lois Neihaus, husband and wife, as individuals and as natural parents and next best friends of Kyle Neihaus, a minor, Plaintiffs/Appellants,

v.

SOUTHWESTERN GROCERIES, INC., an Arizona Corporation, and Mary Lou Horst, Personal Representative of the Estate of Paul Horst, Deceased, Defendants/Appellees.

ROYAL–GLOBE INSURANCE COMPANY,
Plaintiff/Appellee,

v.

Louis NEIHAUS and Lois Neihaus, husband and wife, as individuals and as natural parents and next best friends of Kyle Neihaus, a minor, and Mary Lou Horst, Personal Representative of the Estate of Paul Horst, Deceased, Defendants/Appellants.

Nos. 2 CA–CIV 3528, 2 CA–CIV 3529.

Court of Appeals of Arizona, Division 2.

Sept. 30, 1980.

Rehearing Denied Nov. 6, 1980.

Review Denied Dec. 2, 1980.

Robert S. Wolkin, Tucson, for plaintiffs/appellants Neihaus.

Lesher, Kimble & Rucker, P. C. by Timothy L. Ryan, Tucson, for defendant/appellee Southwestern Groceries, Inc.

D'Antonio & D'Antonio, Tucson, for Mary Lou Horst.

Everett, Bury & Moeller, P. C. by David C. Bury and Kenneth Everett, Tucson, for plaintiff/appellee Royal–Globe Ins. Co.

RICHMOND, Judge.

In consolidated appeals, Kyle Neihaus and her parents seek to reverse a declaratory judgment that there was no liability insurance coverage for the deceased driver of a vehicle in which she was injured, and a summary judgment on liability in favor of the driver's employer. Both judgments are affirmed.

■ In the coverage case, which was submitted to the trial court on depositions and a copy of the insurance policy, there is no dispute as to the facts. By contending those facts create a genuine issue in the liability case on the question of permissive use, the Neihauses concede there is evidence to support the trial court's finding on the same question in the coverage action. Nevertheless, they contend the deceased driver was an insured under paragraph (d) of the following policy definition:

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured;

(b) any partner or executive office thereof, but with respect to a non–owned automobile only while such automobile is being used in the business of the named insured;

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

(1) a lessee or borrower of the automobile, or

(2) an employee of the named insured or of such lessee or borrower;

(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above.

The argument is based ostensibly on *Consolidation Coal. Co., Inc. v. Liberty Mutual Insurance Co.,* 406 F.Supp. 1292 (W.D.Pa. 1976). We are unable to find any support in that case for the novel assertion that paragraph (d) operates to extend coverage to a non–permissive user because the Neihauses also are claiming damages from the named insured for negligent entrustment of the vehicle. That the owner may be liable for negligently entrusting a vehicle to someone who foreseeably acts negligently or recklessly while operating the vehicle beyond the scope of permission does not create liability for the non–permissive user. Instead, the conduct of the user creates liability for the owner.

■ In the liability case the facts also are undisputed. The deceased driver, Paul Horst, was a 17–year–old warehouse worker for Southwestern Groceries, Inc. Horst had been given permission to drive a commercial van to and from his home. The president of the company testified that he had discovered on one occasion prior to the accident in question that Horst was using a company vehicle for personal reasons and had told Horst he would be fired if he did so again. The president denied any knowledge of Horst's subsequent personal use of the van. The Neihauses, however, contend an issue of negligent entrustment based on implied permission is created either by another employee's knowledge of Horst's continued personal use or by Kyle's testimony on deposition. We disagree. Kyle said that she had been seen at the employer's warehouse on one occasion after Horst had picked her up at work and that on a second occasion while she was riding with him in the van Horst had identified the operator of a passing vehicle as either his boss or his boss's son. Implied permission may be based on a course of conduct indicative of mutual acquiescence or a lack of objection under circumstances signifying assent. *Home Insurance Co. v. Keeley,* 20 Ariz.App. 200, 511 P.2d 213 (1973). Neither the uncommunicated knowledge of the employee, another 17–year–old warehouse worker who

had been present when Horst was told that unauthorized use would cause him to be fired, nor Kyle's testimony supports an inference of any such course of conduct.

Inasmuch as Horst's use of the vehicle at the time of the accident was unauthorized, the trial court properly determined that there was no basis for the negligent entrustment theory of liability. *Davis v. Vumore Cable Co.*, 14 Ariz.App. 411, 484 P.2d 23 (1971).

Finally, the Neihauses argue that liability may be imposed on Southwestern under A.R.S. § 28–420 because Horst was 17 and had only an operator's license and the van was a commercial vehicle. The statute imposes on the owner of a motor vehicle who knowingly permits an unlicensed minor to operate the vehicle on a highway joint and several liability for damages caused by the negligent or willful misconduct of the minor in driving the vehicle. The Neihauses contend the statute applied to Southwestern as owner of the van because Horst did not have a chauffeur's license. The argument fails for at least two reasons: (1) the use to which a vehicle is being put, not the nature of the vehicle or its ownership, determines when a chauffeur's license is required, *see* A.R.S. § 28–414(B); (2) the evidence establishes conclusively that the vehicle was being operated without the known permission of Southwestern at the time of the accident.

The judgments are affirmed.

ARNOLD and HOWARD, JJ., concur.