## No. 27021

**Pauline J. Johnson v. Division of Employment, State of Colorado, and Industrial Commission of Colorado, (Ex-officio Unemployment Compensation Commission of Colorado)**

(550 P.2d 334)

Decided June 1, 1976.

Robert L. Harris, for petitioner.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, John Kezer, Assistant, Louis L. Kelley, Assistant, for respondent Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado)

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an appeal from a decision of the Industrial Commission of Colorado (the commission) denying the application of claimant Johnson (claimant) for unemployment compensation benefits by reason of leaving state employment. The denial was based on a finding that the unemployment benefits to which she might have been entitled when reduced by the amount of her retirement pay left her with zero unemployment benefits. She challenges the commission's power to make the deduction. We affirm.

The facts of this case are not in dispute. Claimant was employed in state service for 28 years. She was compelled to retire at the age of 57 because her husband's health required a move to a warmer climate. She elected to receive retirement benefits on a reduced annuity basis pursuant to section 24-51-109(4), C.R.S. 1973.[1] These were paid to her in monthly installments of $460.

The commission denied claimant's claim on the basis of section 8-73-110(3)(a)(I), C.R.S. 1973, which deals with unemployment benefits and provides:

"(3)(a) Individuals who receive or are entitled to receive the following types of remuneration shall be entitled to receive for such week, if otherwise eligible, benefits *reduced* by the amount of such remuneration, and any such amounts which have been deducted from the benefit payment by reason of the provisions of this subsection (3) shall not be available for future benefits:

"(1) Retirement payments in the form of an annuity, pension, or other retirement pay from an employer or from any trust or *fund contributed to by an employer*; except that there shall be no denial or reduction of

---

[1]Amended in Colo. Sess. Laws 1975, ch. 218, § 2 at 827.

award if in the individual's base period there are no wages which were paid by the employer paying or contributing to such remuneration; . . ." (Emphasis added.)

## I.

■ Claimant argues that the commission misinterpreted the above-cited statute. She asserts that the pension payments she is receiving currently constitute solely her own funds contributed during her years of state employment to the Public Employees' Retirement Association (PERA). This allegation stated another way is that the payments to her are from the approximate $10,000 she paid to PERA, that such monies are hers, and that she is not receiving payments from a "fund contributed to by an employer." The argument is contrary to the statutes creating the PERA fund.

The pension to which claimant is entitled is provided for by a number of statutory provisions. The amounts contributed to the PERA fund by employees and the state are outlined, respectively, in sections 24-51-104 and 105, C.R.S. 1973. Then follows section 24-51-106(1), C.R.S. 1973, which states:

"The *retirement fund* shall consist of accumulated deductions from the salaries of members of the public employees' retirement association, interest paid by members on deferred payments, accumulated contributions made by the state and other public employers, fees collected, gifts received, unclaimed deposits, and investments and the income derived therefrom. The retirement fund is declared to be a *trust fund* for the purposes of this article." (Emphasis added.)

The commission thus correctly applied section 8-73-110(3)(a)(I).

Claimant argues that the commission's interpretation effects an unconstitutional denial of the equal protection clause of the Fourteenth Amendment. It is argued she could have taken a lump sum refund of her PERA contributions and thus would not be receiving retirement "pay" or "payments" within the meaning of the statute and would have been entitled to unemployment compensation. She contends that this distinction in mode of payment effects an invidious discrimination against her and bears no rational relationship to any legitimate state interest.

■ It is axiomatic that the constitutionality of legislative enactments is presumed. *Mosgrove v. Town of Federal Heights*, 190 Colo. 1, 543 P.2d 715 (1975); *Gates Rubber Co. v. South Suburban Metropolitan Recreation and Park District*, 183 Colo. 222, 516 P.2d 436 (1973); *Harding v. Industrial Commission*, 183 Colo. 52, 515 P.2d 95 (1973). Claimant, as assailant of the statute, bears the burden of proving it unconstitutional beyond a reasonable doubt. *Mosgrove, supra; Turner v. Lyon*, 189 Colo. 234, 539 P.2d 1241 (1975). That burden has not been met here.

■ Part 1 of article 51 of title 24, C.R.S. 1973, provides, *inter alia*, a comprehensive scheme in regard to the administration of retirement benefits. If an employee, such as claimant herein, leaves state service prior to qualifying for retirement payments, several options are available. See section 24-51-109.

For example, a former employee may (1) secure a refund of the full amount he contributed to the PERA fund without interest; (2) elect to continue contributing to the fund until otherwise becoming eligible to secure an annuity; or (3) leave the deductions on deposit and receive a reduced monthly payment for life. Claimant chose the third option.

Obviously, each of these options has certain advantages and disadvantages. Persons receiving a lump sum refund forfeit the benefits of interest as well as the financial contributions made by the state. Those, as claimant, who elect to take reduced annuity payments are afforded the opportunity of receiving payments based upon these augmentations, plus guaranteed lifetime income. Persons making different elections are not only placed in different economic positions but benefit differently as regards financial contributions from the state. Section 8-73-110(3)(a)(I) reflects this.

■ Where, as here, neither suspect classifications nor the infringement of fundamental rights are involved, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); *Mosgrove, supra.*

As the United States Supreme Court stated in *Dandridge, supra*:
"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' [Citation omitted]"

Other arguments raised by claimant do not merit discussion.

Order affirmed.